JOHN A. WATSON, Appellant, v. JOHN G. PRIEST ET AL.,
Respondents.

### June 22, 1880.

1. Where an heir conveys all his "right, title, and interest" in the estate of
his ancestor, this conveyance will cover his undivided interest in lands
afterwards decreed to belong to his ancestor, but concerning which it was
believed at the time of the conveyance that no title existed in the grantor
or his ancestor.

2. Where a tenant in common executes a mortgage of his undivided interest
in the land to one of his co-tenants, and all the tenants become parties to
a partition suit, in which no mention is made of the mortgage, after
partition is had the mortgage may be foreclosed and enforced against the
lot set apart to the mortgageor.

APPEAL from the St. Louis Circuit Court, WICKHAM, J.
*Reversed and remanded.*

H. A. CLOVER, for the appellant: A judgment in parti-
tion establishes the title to the land which is the subject of
partition, and is conclusive upon all the parties to the
record, and those claiming under them by title acquired
subsequent to the commencement of the partition suit. —
*Forder* v. *Davis*, 38 Mo. 107. The petition must show in
plaintiff a legal title to the premises sought to be divided. —
*McCabe* v. *Hunter*, 7 Mo. 355. The interest of all the
claimants should be alleged and proven. — *Millington* v.
*Millington*, 7 Mo. 446. A party to a partition suit must as-
sert any claim he may have for improvements, in such suit;
he cannot afterwards sue for their value. — *Spitt* v. *Wells*,
18 Mo. 468. In a suit for partition of land, the trustee and
*cestui que trust* in a deed of trust covering part of the prem-
ises are properly made parties for the purpose of binding
their interest, although no relief be prayed against them. —
*Alexander* v. *Warrance*, 17 Mo. 228; *Reinhardt* v. *Wen-
deck*, 40 Mo. 577; *Farrar* v. *Christy's Administrator*, 33
Mo. 56. The whole title must be conveyed by the judg-
ment in partition. — *Owsley* v. *Smith*, 14 Mo. 153; *Ful-*

*bright* v. *Canefox*, 30 Mo. 425. Estoppel: equitable and by acts *in pais*. — Herman on Estop. 419 ; *Sanderson* v. *Ballance*, 2 Jones Eq. 323 ; *Ryder* v. *Rubber Co.*, 4 Bosw. 169 ; *McCormick* v. *McMurtrie*, 4 Wall. 192 ; *Carr* v. *Wallace*, 7 Wall. 394 ; *Garner* v. *Bird*, 57 Barb. 277 ; 14 Serg. & R. 27 ; *Moody* v. *Van Dyke*, 4 Binn. 31 ; *Bell* v. *Harris*, 10 Serg. & R. 43. John A. Watson, after the partition, was no longer a joint tenant with the other heirs of R. D. Watson. — 1 Eq. Cas. Abr. 355 ; 2 Id. 522 ; 4 Serg. & R. 244 ; 2 Atk. 83 ; 3 Atk. 692 ; 2 Rawle, 92, 326.

ARBA N. CRANE, for the respondents : The Bakewell deed of trust covers all the interest of Felton P. Watson in the estate of his deceased father, Ringrose D. Watson, in St. Louis County. — *Lackland* v. *Nevins*, 3 Mo. App. 335 ; *Means* v. *Lavergne*, 50 Mo. 343 ; *Jackson* v. *Delancy*, 11 Johns. 365 ; *Menkins* v. *Blumenthal*, 27 Mo. 198. And may be foreclosed against the lot set apart to the mortgageor in the partition suit. — *Hull* v. *Lyon*, 27 Mo. 570. The Statute of Limitations has no application here, because we seek to enforce the security. This we may do so long as the security is available, it being clearly proved that the notes have not been in fact paid. —*Chouteau* v. *Burlando*, 20 Mo. 482 ; *Cape Girardeau* v. *Harbison*, 58 Mo. 90 ; *Wiswell* v. *Baxter*, 20 Wis. 680.

LEWIS, P. J., delivered the opinion of the court.

This is a voluminous record, containing a vast amount of testimony, documentary and oral, relating chiefly to the original title of the land involved in the controversy. Out of the complications in which the history of this title abounds, and the transactions of more recent date which help to swell the record, there seem to arise at last but two vital questions, whose solution must determine the rights of the parties : 1. Where one conveys " all the right, title, and interest " of the grantor in the estate of his deceased father, will the conveyance cover an undivided interest in the

lands, concerning which it is doubted, at the time of the conveyance, that the ancestor held any title, — or even generally believed that he had none, — but which lands are afterwards, by a series of adjudications, determined to have belonged to the ancestor? 2. Where one of several tenants in common is the beneficiary in a deed of trust in the nature of a mortgage executed by one of his co-tenants upon his undivided interest in the land, and all the tenants become parties to a partition suit, in which no mention is made of the trust conveyance, can the *cestui que trust,* after judgment and actual partition of the land, cause his trust-deed to be foreclosed and enforced against the lot set apart to the maker of the deed?

In the elaborate briefs presented by the counsel on both sides, numerous other questions are discussed with much learning and ability; but all of them are merely subordinate, and it is believed that the most careful solutions of them could do no more than point the way to a proper determination of the two principal questions just stated.

The first of these must be answered in the affirmative. By Wagner's Statutes, p. 272, sect. 1, " conveyances of land, or of any estate or interest therein, may be made by deed executed by any person having authority to convey the same," etc. This comprehensive provision does away with many of the common-law refinements and distinctions about the transferable interests in land.

One might have an interest in real estate, such as a contingent remainder, and yet could not in former times alienate it, because it constituted no estate in the land. But the policy of our statute, not regarding the inquiry whether there is or is not an estate to convey, simply places the transferee in the condition of the transferor as to any interest or right that might be claimed by the latter concerning the land to which the conveyance refers. There may, of course, be modifications upon the face of the deed, or such as will arise upon matters of notice, etc.; but no mere fact

of remoteness, contingency, or uncertainty of ultimate enjoyment will render a conveyance ineffectual if there be a present vested interest in the grantor which he might now or hereafter call upon the courts to protect. It can be of no conseqence whether or not the grantor is acquainted with the full extent of his rightful claim. If, after describing specific lands or titles he superadds a sweeping conveyance of all his interest in other lands or titles not described, that fact of itself implies that there may be other such lands or titles unknown to him, or at least not described, and which he yet intends to convey. Such is the case in the present instance. The deed of trust executed by defendant Felton P. Watson, whose foreclosure the plaintiff seeks to prevent, adds to a lengthy description of lands conveyed, and which were derived chiefly, if not wholly, from the estate of the grantor's deceased father, the words, "and also all the right, title, and interest of said Felton P. Watson in the estate of his deceased father, Ringrose D. Watson." Plaintiff undertakes to exclude the land in controversy from this sweeping clause, because when it was written the state of the title, or the supposed absence of title, was such that it could not have been in contemplation of the parties. It may be true that this particular property or estate was not present in their minds. But it is equally true that the conveyance was so framed as to include not only what was present and certain, but also what later events or disclosures might render certain, as an estate or interest to be derived by the grantor from the estate of his deceased father. It is not pretended that the property in controversy came to Felton P. Watson from any other source. *Id certum est, quod certum reddi potest.* The deed of trust under consideration was executed by Felton P. Watson and recorded on August 31, 1858. Against this trust-deed the plaintiff claims the land in controversy under a conveyance from the same grantor dated March 21, 1862.

In a suit for partition among joint tenants or tenants in

common, the parties become mutual warrantors of the common title. This is all that we understand to be settled by the authorities cited for the plaintiff. It follows from this that one of the partitioners cannot, after the judgment of partition, set up against another one a title adverse to the common title, because that would be an act of hostility against his own warranty. The philosophy of this doctrine is traceable to the common-law writ *de partitione facienda*, which was employed in the cases of coparceners. It was held that the writ, being compulsory, should not put parceners in a worse condition after partition than if they had enjoyed their moieties without division; therefore, if, after partition, one be impleaded, she may vouch her sister, and if she loses, may have recompense against her. So, if the parceners enjoy in common, and one be evicted by entry, she may enter on her sister's moiety, avoid the partition, and compel a new partition. Co. Lit. 173 b. All this proceeds upon the fundamental idea of a warranty between the co-parceners as to the common or joint title in the whole. We do not find that the rule, or the reason of the rule, was ever applied to mere equities existing between the parceners or partitioners.

Practically, in this State, the partition of real estate, when not made by mutual conveyances, is exclusively a proceeding at law, under the statute. In other States, where similar statutes prevail, it has repeatedly been held that the judgment of partition deals with the legal title only, and that any equities existing between the parties may be adjusted as well afterwards as before. *Williams* v. *Van Tuyl*, 2 Ohio St. 336; *Greenup* v. *Sewell*, 18 Ill. 53. In Pennsylvania, the same doctrine is applied to cases of unequal advancements to different heirs. The partition will be governed by the naked rights of descent, and the inequalities of the advancements may be adjusted afterwards, without prejudice from the partition. *Dutch's Appeal*, 57 Pa. St. 461.

In the present case, the deed of trust executed by Felton P. Watson on August 31, 1858, was to secure certain notes then drawn by Watson in favor of Robert A. Bakewell, the beneficiary named in the deed. These notes were afterwards, and before maturity, assigned to the defendant Ringrose J. Watson, whose ownership of them has been transferred to the defendant August L. Priest. The partition to which Ringrose J. Watson and the plaintiff were parties, and which is here interposed against the foreclosure of the deed of trust, was made in 1867, while Ringrose J. Watson was owner of the notes, and after Felton P. Watson had conveyed his interest in the land to the plaintiff. The share of Felton P. Watson was allotted to the plaintiff, as assignee. It thus appears that the claim of foreclosure on behalf of Ringrose J. Watson or his assignee (Priest) was a mere equity existing between two of the partitioners, and was therefore not affected by the partition of the legal titles. There have been cases in which such equitable claims were brought into the partition proceeding and adjusted in the judgment or decree. But it has been uniformly held that such action was not necessary, and that the judgment without it would not prejudice the rights of the equitable claimant. In *Hull* v. *Lyon*, 27 Mo. 570, the plaintiff sued for foreclosure of a deed of trust upon lands of which there had been partition, in a proceeding to which the plaintiff was a party, as the husband of one of the tenants in common. The Supreme Court said : " In the partition suit referred to, Hull set up the mortgage and prayed the benefit of it. Hull was not bound to do this, and his failure to do it would not have affected his rights."

We think it clear that no error was committed by the Circuit Court in ordering a foreclosure of the deed of trust, as prayed for in defendant August L. Priest's cross-bill, notwithstanding the fact of the previous partition, as set up by the plaintiff.

Neither the Statute of Limitations nor the presumption

of payment from lapse of time can have any influence in this controversy, for the reason that during a period of about nine years, commencing before the maturity of the principal note secured by the Bakewell deed of trust, Ringrose J. Watson, the holder, was insane. Testimony was introduced, presumably for a different purpose, which tended to show that during this period Ringrose's mind and memory were sufficiently clear for an understanding of his business interests and a knowledge of all his rights. But such testimony, for whatever purpose affecting this controversy, must yield to the controlling facts of the adjudication of his insanity, and his subjection to guardianship on that account during the whole term.

It appears that as to twenty-five acres of the land originally covered by the deed of trust, Ringrose J. Watson, through his guardian, had purchased the interest of Felton P. Watson therein, at a sale made under a deed of trust which was prior in lien to the Bakewell deed. The right thus purchased constituted a legal title in Ringrose to three and four-sevenths of the twenty-five acres, being Felton's undivided one-seventh as heir of his father, at the time of the partition in 1867. We are of opinion that this legal title was merged in the partition, and cannot now be reached by a foreclosure in favor of Ringrose J. Watson, or his assignee, August L. Priest.

The decree of foreclosure should be modified by excepting therefrom the above described three and four-sevenths of twenty five acres, in addition to the other exceptions and diminutions contained therein. For this reason the judgment is reversed, and the cause remanded for proceedings in accordance with this opinion. Judge HAYDEN concurs; Judge BAKEWELL not sitting.